# IN THE UNITED STATES DISTRICT COURT
# FOR THE NORTHERN DISTRICT OF ILLINOIS
# EASTERN DIVISION

| | |
|---|---|
| LISA BRIDGES, ) | |
| ) | |
| Plaintiff, ) | |
| ) | |
| v. ) | Case No. 09-cv-1880 |
| ) | |
| MCDONALD'S CORPORATION and ) | Judge Robert M. Dow, Jr. |
| LISA EMERSON, ) | |
| ) | |
| Defendants. ) | |

## MEMORANDUM OPINION AND ORDER

Plaintiff Lisa Bridges filed a four-count complaint [1] on March 26, 2009, alleging violations of state and federal law by Defendants McDonald's Corporation and Lisa Emerson. Before the Court is Defendants' Motion to Dismiss Counts II, III, and IV of Plaintiff's complaint [11]. For the reasons stated below, Defendants' motion [11] is granted in part and denied in part.

## I.  Background[1]

On February 13, 2006, McDonald's Corporation ("McDonald's") hired Lisa Bridges as its Senior Director of Executive Compensation. In her role as Senior Director of Executive Compensation, Bridges was responsible for certain aspects of McDonald's executive compensation and had input into the preparation of McDonald's 2007 proxy statement. Among other duties, Bridges' position required her to serve on the McDonald's "Proxy Team" and sub-certify in writing certain compensation-related disclosures in the company's proxy statement. Defendant Lisa Emerson served as Bridges' immediate supervisor during Bridges' tenure with McDonald's.

---

[1] For purposes of Defendant's motion to dismiss, the Court assumes as true all well-pleaded allegations set forth in the amended complaint. See, *e.g.*, *Killingsworth v. HSBC Bank Nevada, N.A.*, 507 F.3d 614, 618 (7th Cir. 2007).

A detailed recitation of the complaint is not necessary to decide the legal issues raised by Defendants' motion to dismiss; broad brushstrokes will suffice. In her complaint, Bridges alleges three fraud schemes perpetrated by McDonald's in conjunction with its 2007 proxy statement. First, Bridges objected to McDonald's "2.99X Severance Compensation Cap Policy" as being too vague and not sufficiently transparent in its treatment of "gross-up" tax benefits that a terminated executive would receive.[2] Bridges alleges that despite her objection, as well as the objection of an outside consultant, McDonald's published to its shareholders the 2.99X Severance Compensation Cap Policy language that, according to Bridges, contained materially deceptive language, terms, and loopholes. Bridges also alleges that in January 2007, McDonald's devised a fraudulent scheme to conceal from shareholders executive Tim Fenton's country club perquisites. Bridges objected to McDonald's handling of Tim Fenton's compensation because she believed that it violated federal disclosure laws. Finally, Bridges alleges that McDonald's defrauded shareholders with respect to the termination of executive Mike Roberts and his entry into McDonald's "Executive Retention Plan."

In April 2007, McDonald's terminated Bridges. On June 29, 2007, Bridges filed an administrative complaint against McDonald's with the Occupational Safety and Health Administration ("OSHA") alleging that she was terminated in violation of Sarbanes-Oxley's whistle-blower provision, 18 U.S.C. § 1514A. Defendant Emerson was not named as a party in Bridges' administrative complaint. After OSHA found in favor of McDonald's and dismissed Bridges' complaint, Bridges appealed OSHA's determination to an Administrative Law Judge. Bridges voluntarily dismissed her administrative appeal on October 21, 2008. On March 26, 2009, Bridges filed the present action, bringing, in addition to her Sarbanes-Oxley claim against

---

[2] A "gross-up" payment is compensation to an individual designed to pay for the tax consequences of receiving certain benefits or compensation.

McDonald's, a Sarbanes-Oxley claim against Emerson and common law retaliatory discharge claims against McDonald's and Emerson. Defendants seek dismissal of Count II (Sarbanes-Oxley claim against Emerson), Count III (common law retaliatory discharge claim against McDonald's) and Count IV (common law retaliatory discharge claim against Emerson).

## II.  Legal Standard on a Rule 12(b)(6) Motion

A motion to dismiss pursuant to Federal Rule of Civil Procedure 12(b)(6) tests the sufficiency of the complaint, not the merits of the case. See *Gibson v. City of Chicago*, 910 F.2d 1510, 1520 (7th Cir. 1990). To survive a Rule 12(b)(6) motion to dismiss, the complaint first must comply with Rule 8(a) by providing "a short and plain statement of the claim showing that the pleader is entitled to relief" (Fed. R. Civ. P. 8(a)(2)), such that the defendant is given "fair notice of what the * * * claim is and the grounds upon which it rests." *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 555 (2007) (quoting *Conley v. Gibson*, 355 U.S. 41, 47 (1957)). Second, the factual allegations in the complaint must be sufficient to raise the possibility of relief above the "speculative level," assuming that all of the allegations in the complaint are true. *E.E.O.C. v. Concentra Health Servs., Inc.*, 496 F.3d 773, 776 (7th Cir. 2007) (quoting *Twombly*, 550 U.S. at 555). "Detailed factual allegations" are not required, but the plaintiff must allege facts that, when "accepted as true, * * * 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal,* --- U.S. ----, ----, 129 S.Ct. 1937, 1949 (2009) (quoting *Twombly*, 550 U.S. at 555). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Iqbal,* 129 S.Ct. at 1949. "[O]nce a claim has been stated adequately, it may be supported by showing any set of facts consistent with the allegations in the complaint." *Twombly*, 550 U.S. at 563. The Court accepts as true all of the well-pleaded facts alleged by the plaintiff and all

reasonable inferences that can be drawn therefrom. See *Barnes v. Briley*, 420 F.3d 673, 677 (7th Cir. 2005).

**III.    Discussion**

    **A.    Sarbanes-Oxley Whistle-Blower Retaliation Against Defendant Emerson**

In Count II, Bridges brings a Sarbanes-Oxley ("SOX") claim against Defendant Emerson, her former supervisor, alleging that Emerson violated SOX's whistle-blower protection provisions on April 6, 2009, by terminating Bridges' employment. In their motion to dismiss, Defendants contend that Bridges failed to administratively exhaust this SOX claim because Bridges did not name Emerson individually as a respondent in Bridges' administrative charge.

The Sarbanes-Oxley Act "provides that no company subject to the Securities Exchange Act of 1934 may retaliate against an 'employee' who lawfully cooperates with an investigation concerning violations of the Act or fraud on the shareholders." *Carnero v. Boston Scientfic Corp.*, 2004 WL 1922132. at *2 (D. Mass. Aug. 27, 2004) (quoting 18 U.S.C. § 1514A(a)). Section 1514A(b), the enforcement provision, allows any "person" who alleges discharge or discrimination in violation of § 1514A(a) to seek relief. SOX clearly requires the filing of an administrative charge as a prerequisite to bringing a civil suit. See 18 U.S.C. § 1514A(b) (2006); *Smith v. Corning Inc.*, 2007 WL 2120375, at *2 (W.D.N.Y. July 23, 2007) (finding that "[i]t is undisputed that the Act requires a plaintiff to exhaust his administrative remedies before commencing an action in federal court"). Before an employee may assert a cause of action in federal court under the Sarbanes-Oxley Act, the employee must file a complaint, within ninety days after the date on which the violation occurs, with the Occupational Safety and Health Administration ("OSHA") and afford OSHA an opportunity to resolve the allegations administratively. See *Willis v. VIE Financial Group, Inc.,* 2004 WL 1774575, at *3 (E.D. Pa.

4

Aug. 6, 2004) (citing 18 U.S.C. § 1514A(b)(1)(A); 29 C.F.R. § 1980.103(c)); see also 18 U.S.C. § 1514(b)(2)(D).

Bridges filed an administrative complaint with OSHA on June 29, 2007, naming only McDonald's Corporation as the respondent. Defendants concede that Bridges filed a timely administrative complaint as to McDonald's, but contend that Bridges' failure to name Emerson as a respondent in the administrative complaint dooms any SOX claim against Emerson. Bridges contends that the administrative complaint that she filed with OSHA applies to Emerson because she was identified as an actor and witness in the complaint and therefore was on notice of the claim against her.

While the regulations implementing SOX may provide for individual liability,[3] Bridges still is obligated to exhaust her administrative remedies for each claim that she seeks to assert against each defendant. In both *Bozeman v. Per-Se Technologies, Inc.*, 456 F. Supp. 2d 1282, 1357-58 (N.D. Ga. 2006), and *Hanna v. WCI Communities, Inc.,* 2004 U.S. Dist. LEXIS 25652, at *7-8 (S.D. Fla. Nov. 15, 2004), district courts were faced with motions to dismiss filed by individual defendants arguing that the plaintiffs' SOX claims asserted against them were barred for failure to file administrative complaints specifically naming them as parties, even though they were identified in the administrative complaints as actors involved in the plaintiffs' terminations. Both courts agreed that merely mentioning an individual defendant in the body of the administrative complaint as an actor, rather than naming him (or her) in the caption of the administrative complaint, fails to afford OSHA the opportunity to resolve a plaintiff's allegations through the administrative process. In *Hanna*, the district court stated, "Even if the court assumed that [the individual defendant] was placed on notice that he had allegedly violated the

---

[3] See 29 C.F.R. 1980.101 (2004) (definition of "company representative" includes "any officer, employee, contractor, subcontractor, or agent of a company")).

law, that notice has no consequence as to whether *OSHA* was placed on notice that it was required to investigate [the individual defendant's] actions in this case." 2004 U.S. Dist. LEXIS 25652, at *8 (emphasis added). The courts concluded that OSHA was never provided an opportunity to issue a final decision with respect to the plaintiffs' claims against the individual defendants. See also *Levi v. Anheuser-Busch Co.*, 2008 WL 4816668, at *3 fn. 4 (W.D. Mo. Oct. 27, 2008) (noting that plaintiff failed to name a party in an administrative charge and the time for doing so had passed); *Smith v. Corning Inc.*, 2007 WL 2120375, at *2 (W.D.N.Y. July 23, 2007) (finding that plaintiff failed to exhaust administrative remedies by failing to name an individual and noting that "it is not sufficient to merely mention an individual in the body of an administrative complaint"); *Smith v. Psychiatric Solutions, Inc.*, 2009 WL 903624, at *8 (N.D. Fla. Mar. 31, 2009) (finding that plaintiff could not pursue SOX claims against parties not named in the heading of the administrative complaint).

Likewise, Bridges never provided OSHA with an opportunity to issue a final decision as to her claim against Emerson because she failed to specifically name Emerson as a respondent in her administrative complaint. The mere fact that Emerson is mentioned in the body of the OSHA complaint is insufficient. While Emerson may have had notice of Bridges' claim against McDonald's, she would not have known that Bridges was pursuing a claim against her individually.

While Bridges acknowledges the general rule that parties not named in an administrative charge must be dismissed, she argues that the question remains open in the Seventh Circuit and that our court of appeals may choose not to follow the rule emerging from the district courts cited above, but instead may import into SOX an exception recognized in Title VII case law. In limited instances in Title VII cases, courts will permit a claim against an unnamed party when

6

that party had "adequate notice" of the proceedings and the "opportunity to participate in the conciliatory proceedings aimed at voluntary compliance." *Eggleston v. Chicago Journeyman Plumbers' Local Union No. 103*, 657 F.2d 890, 905 (7th Cir. 1981). While the Court agrees that courts have found parallel requirements between Title VII and SOX, courts also have found a key difference in the administrative proceedings underlying the two statutes. Specifically, "[t]he administrative scheme underlying the Sarbanes-Oxley Act is judicial in nature and is designed to resolve the controversy on its merits, as opposed to the administrative procedures under Title VII * * * * These procedures stand in contrast to those of Title VII which are geared toward fostering settlement." See *McClendon v. Hewlett-Packard Co.*, 2005 WL 2847224, at *3-4 (D. Idaho Oct. 27, 2005) (citing *Willis.*, 2004 WL 1774575, at *5). Requiring that an aggrieved employee name not only the corporate defendant but also an individual defendant affords OSHA the opportunity to adjudicate claims with respect to the specific individual. Thus, even if the individual was placed on constructive notice by being named as an actor in a complaint, courts consistently have emphasized that failing to name the individual as a respondent deprives *OSHA* of the opportunity to resolve the employee's allegations with respect to the individual. Because of the judicial – as opposed to conciliatory – nature of SOX proceedings, requiring that an individual defendant be named as a respondent in an administrative charge makes sense and is consistent with the statutory scheme. Thus, the Court concludes that Bridges failed to exhaust her administrative remedies as to her SOX claim asserted against Defendant Emerson.

    **B.**    **Common Law Retaliatory Discharge Claim Against McDonald's**

In Count III, Bridges brings a common law retaliatory discharge claim against McDonald's, alleging that McDonald's terminated Bridges' employment in retaliation for Bridges objecting to McDonald's activities. In her response brief, Bridges emphasizes that her

retaliatory discharge claim is grounded in Illinois common law and is not brought pursuant to the Illinois Whistleblower Act ("IWA"), 740 ILCS 174/1 *et seq*. Under Illinois common law, a retaliatory discharge claim exists if: (i) the employee has been discharged (ii) in retaliation for her activities, and (iii) the discharge violates a clearly mandated public policy. See *Fellhauer v. City of Geneva*, 568 N.E.2d 870, 875 (Ill. 1991); see also *Palmateer v. Int'l Harvester Co.*, 421 N.E.2d 876, 879-80 (1981). McDonald's argues that Bridges' claims do not fall within the scope of retaliatory discharge.

While McDonald's does not argue that the Illinois common law tort of retaliatory discharge has been preempted by the IWA, 740 ILCS 174/1 *et seq*, the Court briefly addresses this issue, as there has been some disagreement among the courts in this district. Compare *Riedlinger v. Hudson Respiratory Care, Inc.,* 478 F. Supp. 2d 1051, 1054 (N.D. Ill. 2007), and *Jones v. Dew,* 2006 WL 3718053, at *3 (N.D. Ill. Dec.13, 2006), with *Washington v. Association for Individual Development*, 2009 WL 3616453, at *4-5 (N.D. Ill. Oct. 29, 2009) and *Lizak v. Great Masonry, Inc*., 2009 WL 855952, at *2-3 (N.D. Ill. Mar. 30, 2009). The Illinois Appellate Court, addressing both *Jones* and *Riedlinger*, recently held that the IWA did not preempt the common law retaliatory discharge tort. See *Callahan v. Edgewater Care & Rehabilitation Ctr., Inc.,* 872 N.E.2d 551, 554 (Ill. App. Ct. 2d Dist. 2007) ("The rule has long been that a statute will not be construed as taking away a common-law right existing at the time of its enactment unless the pre-existing right is so repugnant to the statute that the survival of the common-law right would in effect deprive the statute of its efficacy and render its provisions nugatory" and "we fail to see how [the IWA] creates any irreconcilable conflict with the persistence of a common-law remedy in favor of employees not covered by the statute but who, nevertheless, are discharged in retaliation for whistleblowing activities in violation of a clearly mandated public policy"). The

*Callahan* court noted that "[in] *Jones,* the court rested its preemption holding on this court's statement [in *Sutherland*] that the Whistleblower Act codified the common law retaliatory discharge claim based on whistleblowing activities. The *Reidlinger* court essentially relied upon the reasoning and holding in *Jones*. Neither court, however, conducted an analysis of the issue of when a statute preempts or repeals a common-law remedy by implication." *Id.* at 553 (internal citations omitted). *Callahan,* in contrast, conducted a full preemption analysis and concluded that the retaliatory discharge tort was not preempted by the IWA.[4]

In predicting how the Illinois Supreme Court will rule, the Seventh Circuit has stated that "[t]he decisions of the Illinois Appellate Court are persuasive authority. Although those decisions do not bind us, we shall follow them unless we have a compelling reason to believe that they have stated the law incorrectly." *Adams v. Catrambone,* 359 F.3d 858, 862 (7th Cir. 2004). Because *Callahan* directly addressed the issue at hand after conducting the complete preemption analysis, this Court defers to its decision and holds that the IWA did not preempt the common law tort of retaliatory discharge.

Bypassing the preemption argument, McDonald's first contends that Bridges fails to state a retaliatory discharge claim because even common-law claims of retaliatory discharge may be brought only by employees who reported to the government or law enforcement. However, this argument is contrary to the holdings of at least two Illinois state courts and two courts in this district. See *Callahan,* 872 N.E.2d at 553-54; *Petrik v. Monarch Printing Corp.,* 444 N.E.2d 588 (Ill. App. Ct. 1st Dist. 1982) (employee who was discharged for reporting perceived criminal conduct to superiors stated a claim for retaliatory discharge); see also *Washington*, 2009 WL 3616453, at *4-5; *Nappi v. Meridian Leasing Corp.,* 859 F. Supp. 1177 (N.D. Ill. 1994) (finding

---

[4] The *Callahan* court did state that it reasonably can be argued that the IWA codified the common law actions for employees discharged for reporting illegal activities to a government or law enforcement agency. *Id*. at 554.

9

that report may be made to employer). McDonald's cites *Bustamante v. Tin, Inc.,* 2008 WL 360786 (N.D. Ill. Feb. 11, 2008), in support of its position. *Bustamante* did hold that the disclosure must be directed towards law enforcement or the government; however, the *Bustamante* court relied exclusively on *Buckner v. Atlantic Plant Maintenance, Inc.,* 694 N.E.2d 565 (Ill. 1998). *Buckner* did not address the question of whether the discharged employee's disclosures must have been directed to law enforcement or the government. While the *Buckner* court did note the "narrow scope" of the retaliatory discharge cause of action, its holding specifically addressed the question of "whether a plaintiff may bring a retaliatory discharge action against the employee or agent of his former employer who effected the discharge on behalf of the employer." 694 N.E.2d at 567. Thus, the Court agrees with those courts that have determined that a retaliatory discharge claim is not limited to those employees who reported to the government or law enforcement.

McDonald's also argues that even if the disclosures did not have to be directed to law enforcement or the government, Bridges failed to identify any whistleblowing "report" or "activity." McDonald's contends that all of the communications that Bridges references in her complaint are merely internal discussions that she was expected to engage in and that this type of participation in internal dialogue does not constitute whistleblowing activity. Accepting as true Bridges' allegations, the Court concludes that Bridges has sufficiently alleged the elements of a retaliatory discharge claim, including alleging that McDonald's engaged in activity that Bridges believed to be illegal, that she reported that activity to her supervisors, and that she was subsequently fired. McDonald's contests the "formalness" of Bridges' reporting or complaining, but at this stage, her allegations suffice. See, *e.g.*, Compl. ¶ 30 (alleging that "Bridges informed Defendant McDonald's, by and through Defendant Emerson, that she objected to the Fenton

10

Scheme to Defraud as violating federal disclosure laws and deceiving Defendant McDonald's shareholders and the public."). For these reasons, the Court finds that Bridges has stated a claim for retaliatory discharge under Illinois common law and denies Defendants' motion as to Count III.

### C. Common Law Retaliatory Discharge Claim Against Emerson

In Bridges' response brief, she concedes that Defendant Emerson is not a proper party to a common law retaliatory discharge claim and agrees with Defendants that this Court should dismiss Count IV with prejudice, which the Court will do.

## IV. Conclusion

For the reasons stated above, Defendants' motion to dismiss [11] is granted in part and denied in part. The Court grants Defendants' motion to dismiss as to Counts II and IV and denies Defendants' motion as to Count III. Counts I (Sarbanes-Oxley claim against McDonald's) and III (common law retaliatory discharge claim against McDonald's) of Plaintiff's complaint therefore remain pending before the Court.

Dated: December 21, 2009

_____
Robert M. Dow, Jr.
United States District Judge